The Honorable J. Richard Creatura

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13
14
15

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RAOUL V. NORMANDIA, JR., <br><br> Defendant. | NO.  MJ20-213 <br><br> COMPLAINT for VIOLATION <br><br> 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) |

16    BEFORE United States Magistrate Judge J. Richard Creatura, Tacoma,

17 Washington.

18    The undersigned complainant being duly sworn states:

19 ### COUNT 1

20 **Possession of Controlled Substances with Intent to Distribute**

21    On or about April 24, 2020, in Federal Way, in King County, within the Western

22 District of Washington, and elsewhere, the defendant, RAOUL V. NORMANDIA, JR.,

23 knowingly and intentionally possessed with intent to distribute (1) 3,4-

24 methylenedioxymethamphetamine ("MDMA"), a Schedule I controlled substance under

25 Title 21, United States Code, Section 812; and (2) cocaine, a Schedule II controlled

26 substance under Title 21, United States Code, Section 812.

27    All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

28

COMPLAINT - 1
*United States v. Normandia*, USAO #2020R00363

This Complaint is based upon the following information:

I, Chris Garlinghouse, a Special Agent with the United States Naval Criminal Investigative Service, having been duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent for the United States Naval Criminal Investigative Service ("NCIS"), assigned to the Special Operations squad, which is attached to the Kitsap County Sheriff's Office West Sound Narcotics Enforcement Team, a regional narcotics unit with multiple local and federal entities.  I have been a Special Agent with NCIS since February, 2018.  Prior to becoming a Special Agent with NCIS, I was a Deputy Sheriff employed by the Orange County Sheriff's Office from 2006 to 2018.

2.      As part of my duties as a Special Agent with NCIS, I investigate controlled substances offenses, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances) and 846 (conspiracy to do the same).  As set forth below, my training and experience includes the identification and interdiction of controlled substances.  During my career as a law enforcement officer, I have been involved in many investigations into controlled substances offenses, including the execution of search warrants, interviews and interrogations of suspected drug traffickers, arrests of drug traffickers, and the identification and seizure of controlled substances and proceeds of drug trafficking.  I am also familiar with the ways that drug traffickers package controlled substances and conceal their illicit activity from detection by law enforcement.

3.      I have completed Criminal Investigator Training Program and Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia.  I have also completed the Florida Department Law Enforcement training, which includes 720 hours of training, and New Jersey Tactical Undercover Agent training program.  I have received specialized training in the investigation of

COMPLAINT - 2
*United States v. Normandia*, USAO #2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  controlled substances and on the identification of controlled substances and interdiction

2  of controlled substances.

3       4.      I make this affidavit from personal knowledge based on my participation in

4  this investigation, including witness interviews by myself and/or other law enforcement

5  agents, communications with others who have personal knowledge of the events and

6  circumstances described herein, and information gained through my training and

7  experience. The information outlined below is provided for the limited purpose of

8  establishing probable cause and does not contain all details or all facts of which I am

9  aware relating to this investigation.

10                          **<u>SUMMARY OF PROBABLE CAUSE</u>**

11      5.      This investigation arises out of an incident on April 18, 2020, in which a

12  sailor with the United States Navy was found unresponsive in his workspace on a Navy

13  ship.  The victim was pronounced deceased at the scene by first responders with Naval

14  Base Kitsap Emergency Medical Services.  In the pocket of the victim's uniform in the

15  workspace, investigators with NCIS found two blue pills believed to be counterfeit

16  30 milligram Percocet pills ("Perc 30s") laced with fentanyl.

17      6.      Further investigation revealed that the victim had received Perc 30s from

18  another sailor on the same ship.  This sailor informed investigators that he had purchased

19  the Perc 30s from a dealer in Seattle and that he had also recently obtained cocaine from

20  this dealer.  Subsequent investigation identified RAOUL V. NORMANDIA, JR. as a

21  supplier of cocaine and counterfeit Perc 30s, including the pills that the sailor had

22  purchased from the Seattle-based dealer.

23      7.      On April 24, 2020, the Honorable Brian A. Tsuchida, Chief United States

24  Magistrate Judge for the Western District of Washington, signed a search warrant for

25  NORMANDIA's residence, located on South 362nd Place in Federal Way, Washington.

26  The warrant authorized federal agents to search for and seize evidence of drug trafficking

27

28

COMPLAINT - 3
*United States v. Normandia*, USAO #2020R00363

activity, including the trafficking of fentanyl and cocaine, and the possession of firearms in furtherance of drug trafficking.

8.      At approximately 2:30 p.m. on April 24, 2020, investigators executed the search warrant on NORMANDIA's residence.  The residence is a four-bedroom, two-story single family home with an attached garage.  NORMANDIA's mother and brother were present at the home at the time of the execution of the search warrant, but both told investigators that they do not live at the residence.  Investigators are not aware of any other individual residing at NORMANDIA's home, and public records searches do not connect any living individual to the address other than NORMANDIA and his mother.

9.      When investigators executed the warrant, NORMANDIA was not present at the residence.  Rather, he was detained prior to the execution of the warrant while driving a black Lexus in the area near the home, with a passenger in the front passenger seat.  After detaining NORMANDIA, investigators searched the black Lexus and found approximately 67 grams of suspected cocaine in the center console.[1]

10.     While executing the search warrant, investigators recovered evidence of drug trafficking activity throughout the residence.  In the dining area on the first floor of the home, investigators found body armor.  In my training and experience, drug traffickers often have and use body armor to protect their homes, drug trafficking proceeds, and the controlled substances in their possession.  Upstairs, in an empty bedroom, investigators found a box with plastic bags of various sizes, consistent with the types of packaging used by drug traffickers to package controlled substances.  This box sat next to a digital scale with a bowl and a spoon, all of which were covered with a white residue, consistent with cocaine.  In the same room, investigators found a vacuum sealer

---

[1] Based on my training and experience, the substances found in the Lexus and in NORMANDIA's residence are consistent with cocaine and MDMA.  Agents have not been able to field test these substances, however, due to safety concerns over the potential presence of fentanyl.

COMPLAINT - 4
*United States v. Normandia*, USAO #2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and related packaging, which, in my training and experience, drug traffickers use to package controlled substances in an attempt to mask their scent to avoid detection by law enforcement.  Next to the garage door, agents found a loaded magazine, consistent with an assault rifle, and loose ammunition, consistent with a handgun.  Throughout the residence, agents recovered no less than 20 cellular phones.  In my training and experience, drug traffickers frequently change phones to avoid detection by law enforcement, and it is common for them to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business.

11.    Investigators identified a room on the second floor as NORMANDIA's bedroom, which was locked and had to be forced open.  In the room, investigators found a stack of Moneygram receipts, mail, and bills in NORMANDIA's name on a nightstand near the bed.  A loaded handgun was found on the bed's headboard.  Under the bed, investigators found a cutting agent and a digital scale with a bowl and spoon, covered in a white residue, consistent with cocaine.  In the closet in NORMANDIA's bedroom, investigators found (1) an assault rifle and corresponding ammunition; (2) plastic bags of various sizes, consistent with the types of packaging commonly used by drug traffickers; (3) a digital scale; (4) a plastic bag containing approximately 101.4 grams of suspected cocaine; and (5) two plastic bags containing a total of approximately 233.3 grams of suspected MDMA.  Based on my training and experience, these amounts of cocaine and MDMA, found near measuring devices and packaging materials, are consistent with drug trafficking.

//

//

//

COMPLAINT - 5
*United States v. Normandia*, USAO #2020R00363

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

12.    Based on the foregoing, I respectfully submit that there is probable cause to believe that the defendant, RAOUL V. NORMANDIA, JR., committed the crime of possession of controlled substances with intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).


CHRIS GARLINGHOUSE, Complainant
Special Agent, NCIS


The above-named agent provided a sworn statement attesting to the truth of the foregoing Complaint and Affidavit by telephone on this 25th day of April, 2020.  Based on the Complaint and Affidavit, the Court hereby finds there is probable cause to believe that the defendant committed the offense set forth in the Complaint.


J. RICHARD CREATURA
United States Magistrate Judge

COMPLAINT - 6
*United States v. Normandia*, USAO #2020R00363